SECURITY LAND CO. et al. v. SOUTH TEXAS DEVELOPMENT CO. et al.

(Court of Civil Appeals of Texas. Galveston. Dec. 14, 1911.)

RECEIVERS (§ 35*)—APPOINTMENT ON EX PARTE HEARING—PROPRIETY.

To warrant appointment of a receiver on an ex parte hearing, the petition must not only state facts sufficient to authorize the appointment, but must further show that there is no other remedy to protect plaintiff, and that there is such pressing necessity for haste in the appointment that plaintiff would probably suffer irreparable loss if the appointment should be delayed until notice to defendant and full hearing.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 35.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by the South Texas Development Company and another against the Security Land Company and others. From an order

appointing a receiver, defendants appeal. Reversed and remanded.

J. E. Niday and Wilson & Dabney, for appellants. Gill & Jones, for appellees.

PLEASANTS, C. J. This appeal is from an order of the judge of the Fifty-Fifth judicial district, made upon ex parte hearing, appointing a receiver of the appellant corporation, in a suit brought against it and the other appellants, who are stockholders and directors of said corporation, by the appellees, the South Texas Development Company and W. B. Renn, a minority stockholder and one of the directors of the appellant corporation.

The petition is lengthy, and it would serve no useful purpose to set out its allegations in detail, or to give the substance of each of its various paragraphs. For the purposes of this opinion, the following general statement of the allegations of the petition will suffice:

The South Texas Development Company is a corporation organized under the laws of this state, having its principal office and place of business in the city of Houston. Plaintiff W. B. Renn is a resident of said city of Houston, in Harris county, and is a stockholder in defendant corporation and one of its directors, and is also an officer of plaintiff corporation. The defendant the Security Land Company is a corporation organized under the laws of the state of Arizona, but is doing business in Texas, and has an office and agent in the city of Houston. The defendants J. F. Manning and H. L. Ritter are directors of defendant corporation. Manning is the president of said corporation, and was residing in the city of Houston at the time the petition was filed. Defendant Ritter is a resident of the state of Colorado. The petition then alleges the execution, by the plaintiff corporation and the defendants, of six different contracts, a copy of each of which said contracts is attached as an exhibit to the petition, and the substance of each set out in the petition.

The first of these contracts was executed by the defendants Manning and Ritter, but it is alleged in the petition that the obligations of said defendants under said contract were subsequently assumed by the defendant corporation. The terms of these several contracts are somewhat confusing, and it is difficult to determine accurately to what extent the first of said contracts are superseded by those subsequently executed. It, however, appears with sufficient certainty from the allegations of the petition that by the terms of the existing contracts between the plaintiff corporation and the defendant company that said plaintiff agreed that it would sell and deliver to the defendant corporation, or to purchasers to be procured by it, 20,000 acres of land owned or to be acquired by the plaintiff corporation in the coun-

ties of Montgomery, Harris, Grimes, and Waller. It was further agreed that the Development Company would furnish abstracts, surveys, plats, and opinions on title, on demand, to the Security Company, of the lands, in tracts of not less than five acres, or multiples thereof, and that the Security Company could sell these lands, as selling agents, at any price it could get, but at not less than $1 per acre, cash, and $1 per acre per month on deferred payments, and that whenever the Security Company paid $10 per acre to the Development Company (with the exception of four sections, as to which it was to pay $7 per acre) on any subdivisions, or multiples thereof, then the Development Company was to deliver deeds to such persons as the Security Company might designate, and release those particular tracts of land from its liens or further claims, crediting the Security Company generally, and holding the remainder of the land. But there was this exception to this price, to wit, that as to the town-site lands the Security Company would not be entitled to deeds at the above rate, but at that rate, plus cost of the improvements on such lands, and 10 per cent. on such cost additional.

It was furthermore expressly agreed that the Development Company should have a first lien on all vendor's lien notes, contracts of sale, and all other securities or property taken or held by said Security Company from the purchasers of said lands, and might direct the place of deposit of same, and should have the right, at all times during business hours, to examine the books and accounts of the Security Company in reference to the sales of said lands and the distribution of the income therefrom.

In addition to these contracts declared upon by plaintiff Development Company, the plaintiff W. B. Renn declared upon a written contract between the Security Company, as party of the first part, and himself, as party of the second part, a copy of which is attached as Exhibit H to plaintiffs' petition. The said contract providing that, in consideration of said Renn's financing the Security Company in its selling of lands in Montgomery county, Tex., obtained by it prior to February 11, 1910, under contract with the Development Company, and furnishing money necessary to pay its bills and carry on its business, the said Security Company sold and transferred to W. B. Renn 50,000 shares of its capital stock; and it was furthermore expressly stipulated that W. B. Renn, in so furnishing money to the Security Company, should be fully advised of the matters on which said money was to be expended, and all indebtedness and expenditures of money should be mutually agreed upon, and furthermore bound himself, upon receipt of statement of the then indebtedness of the Security Company, showing the due and just liabilities of said company, to furnish the mon-

ey to pay the same, not exceeding $5,000. It was furthermore agreed that Renn might select a person who is a competent accountant to be the secretary and treasurer of the Security Company, and to act as a director of said company for and in his behalf, if he so desired.

The plaintiff Development Company alleges in detail complete compliance on its part with all of its said contracts heretofore alluded to, the surveying, subdividing, and platting of the land, its readiness at all times to deliver deeds to the property, its delivery of abstracts of title and opinion of its attorneys as contracted for, and that it has at all times stood ready to deliver additional ones in accordance with the contract.

The plaintiff further alleges that, in order to show good faith, and in the performance and carrying out of said contracts, the plaintiff, at the request of the Security Company, did erect valuable and permanent improvements on said lands in Montgomery county, Tex., known as the "Security Town-Site Tract," building thereon a hotel, residences, and stores, and did further agree that plaintiff would sell said lands to the said Security Company, or its assigns, together with said improvements, and that the Security Company contracted to pay therefor, in addition to the price of the land, the actual cost of the improvements, together with 10 per cent. on said cost.

The plaintiff further alleges that, in addition to the above, the said Development Company, from time to time, at the request of the said defendant Security Company, has made actual cash advancements to the Security Company, aggregating the sum of $5,577.08, and attaches, as Exhibit G, to its petition an itemized statement of all such advancements, giving the respective amounts advanced, and the dates on which the advancements were made, and further alleging that the Security Company contracted to repay said advancements to plaintiff, together with 6 per cent. interest thereon from the date of such advancements, which it has wholly failed to do, and the same is due and wholly unpaid to plaintiff, to its damage in the sum stated, for which the plaintiff sues and prays judgment.

It is further alleged that the defendant Security Company has sold to purchasers procured by it more than 12,000 acres of plaintiffs' said land, and has received from said purchasers the sum of $72,405.89, but has only paid to plaintiff corporation the sum of $1,743.80, and only has on hand the sum of $594.52; that said defendant company is in imminent danger of insolvency, if not already insolvent, and that it has grossly mismanaged its affairs and spent and wasted its funds; that said company has failed and refused to recognize this plaintiff's lien upon the notes, contracts of sale, and all other securities or property taken by it from pur-

chasers of said land, or the right of plaintiff, as provided in said contracts, to select the place of deposit of said notes and securities, and has failed and refused to relinquish possession of the same, but insists upon retaining all of said notes and securities in its possession, and that, unless prevented by the appointment of a receiver to take charge of the property and business of defendant corporation, the said defendants Manning and Ritter will remove all of the said notes and securities, and all the assets and property of said defendant corporation, out of this state.

Then follow allegations to the effect that the defendants Manning and Ritter own a majority of the stock of defendant corporation, and are a majority of its board of directors; that they ignore the rights of plaintiff Renn, the other member of the board of directors, and the owner of the remainder of the stock not owned by said defendants, and are pursuing a policy ruinous to plaintiff and other creditors of the defendants; that defendant corporation is indebted to various parties in the aggregate sum of $187,984.30, and has no assets with which to pay said debts, other than the $594.52 cash on hand, before mentioned, and the contracts and securities taken by it from purchasers of such lands, upon all of which plaintiff corporation has a lien; that said defendant has violated its contracts and agreement to pay plaintiff out of the moneys received by it from purchasers of said lands, and said defendants Manning and Ritter, in violation of their agreement, evidenced by a resolution adopted by the board of directors of defendant corporation, not to spend more than the sum of $1,500 out of the proceeds of the sales of land by them, have spent at least the sum of $3,000 per month; that these expenditures are extravagant and wasteful, and that in a very short time the company will be absolutely insolvent, if it is not now so, and that it will be involved in serious litigation with the purchasers of said lands, who will demand their deeds or the return of their money, and plaintiff Development Company fears it will become involved in such litigation between such purchasers and the Security Company that its lands will be tied up and sales thereof prevented, and plaintiff greatly damaged, and that it will sustain great loss in addition to the damages and losses already sustained; that the third director, W. B. Renn, has tried in every manner possible to persuade the other two directors to conduct the affairs of the company in accordance with the action of the board previously taken, and on an economical basis, to preserve its assets and to pay its debts, especially the amount due the Development Company for its lands, or to create a sinking fund for that purpose, but that the said two directors, Manning and Ritter, refused to change their course, have ignored the said Renn, have declined to do anything further than they are

now doing towards carrying out the contracts with plaintiff, and towards preserving the funds and assets of said corporation for its directors and stockholders.

It is further alleged that, unless the court would take charge of said business and appoint a receiver for the purpose of preserving the assets, securities, contracts, and other properties upon which plaintiff Development Company has a lien, they would be taken out of the state by Manning and Ritter, who had already attempted to remove the office of the Security Company from Texas to St. Louis, and would have done so but for the protest and objection of W. B. Renn.

The said W. B. Renn, as coplaintiff, on his part sets up his contract, heretofore referred to, pleads compliance on his part, the advancement by him of $13,460, which has not been paid, alleges fraud and deceit on the part of the defendants, in that they rendered him a statement purporting to show that the liabilities of the company did not exceed $5,000, when same was not true, as the company at that date owed far in excess of that sum, and that, had said Renn known the truth, and had he not relied upon said statement to be true, he would not have advanced said money to said corporation; that said representations, made by the defendants, were made to said Renn for the purpose of deceiving him, and for the purpose of procuring said advancements from him, and that it has never repaid said sum, and he sues and prays judgment for same.

It is further alleged that the defendant Security Company agreed to pay one-half the salary of one J. G. Hannigan, which it failed and refused to do, and the Development Company paid him the sum of $3,500 for and on behalf of said Security Company, and for which it is indebted to plaintiff, for which it sues and prays judgment.

It is further alleged that a suit for damages against defendants would give plaintiffs no relief, because of the insolvency of the defendants, and that plaintiffs have no adequate remedy at law.

The suit was brought as well for and on behalf of other creditors of the defendants, who may see fit to join herein, as for the benefit of plaintiffs. The prayer is for the appointment of a receiver to take immediate charge of the assets and property of the defendant corporation and to preserve, protect, and manage the same under the orders of the court for the benefit of the stockholders and creditors of said defendant, and for an injunction, restraining the defendants from further carrying on the business of said defendant corporation, and from removing any of its assets out of the state, or in any way interfering therewith, and that upon final hearing plaintiffs have judgment canceling its said contracts with defendant, for the several amounts of money due by defendants to plaintiffs, as before set out, for the establishment and foreclosure of plaintiffs' lien upon the notes and securities received by the defendants from the purchasers of said land, and that the injunction and order appointing a receiver be made final.

This petition was verified by the affidavit of the plaintiff Renn. Upon its presentation to the district judge, without any notice to defendants, and upon an ex parte hearing which involved only the reading and consideration of the verified petition, the judge entered an order appointing a receiver and granting an injunction as prayed for in the petition. This appeal is from that portion of the order appointing a receiver; no complaint being made of the order granting an injunction.

We deem it unnecessary to discuss in detail the several assignments of error presented in appellants' brief. In so far as the assignments complain of the appointment of a receiver upon an ex parte hearing, and without notice to appellants, we think they should be sustained.

To entitle a plaintiff to the appointment of a receiver upon an ex parte hearing, the petition must not only allege facts sufficient to authorize the appointment of a receiver, but must further show that there is no other remedy which will protect plaintiff, and there is such pressing necessity for haste in making the appointment that plaintiffs would likely suffer irreparable loss if the appointment was delayed until notice was given the defendant and a full hearing had. The petition in this case alleges facts which, if found to be true upon a full hearing, might authorize the court to appoint a receiver; but there is nothing in the facts alleged which would justify the conclusion that plaintiffs would likely suffer irreparable loss if the appointment was delayed, in order to give the defendants an opportunity to appear and answer the allegations of the petition. On the contrary, it is apparent that the injunction asked for in the petition, and which was granted by the court, will fully protect plaintiffs in all of their rights, pending a hearing of the application for the appointment of a receiver. Such being the case, the court was not authorized to appoint a receiver upon an ex parte hearing.

The general rule which should be observed by the courts in the appointment of receivers is thus stated by Mr. Beach in his work on Receivers: "It is the well-settled practice that the defendant, whose possession of property is liable to be wrested from him and taken by the court through its receiver, shall have due notice of the application, so that he may be heard, if he desires, in his own defense. This is also in deference to the long-established principles of courts of equity not to encourage ex parte proceedings, except in cases of emergency, and where such proceedings are indispensable to the proper adjudication of the rights of the

parties before the court, or in cases of irreparable impending injury." This rule has been uniformly sanctioned · and followed by our courts. Webb v. Allen, 15 Tex. Civ. App. 605, 40 S. W. 432; Haywood v. Scarborough, 41 Tex. Civ. App. 443, 92 S. W. 815; Wotring & Son v. Indemnity ·Co., 45 Tex. Civ. App. 300, 100 S. W. 358; Hardy Oil Co. v. Burnham, 124 S. W. 221.

Such being our conclusion, it follows that the order appointing the receiver should be reversed and the cause remanded, with instructions to the trial court to set the application for the appointment of a receiver down for hearing, and give defendants notice of such hearing. If, upon a hearing after such notice, the facts developed and found to be true, in the judgment of the trial judge, require the appointment of a receiver to fully protect the rights of the parties, he should make such appointment; but, if not found necessary for the full protection of the rights of the parties, it should not be made.

Reversed and remanded.