**GIBBONS MFG. CO. et al. v. MILAN et al.**
(No. 3705.)

Court of Civil Appeals of Texas. Texarkana.
April 25, 1929.

Jones & Jones, of Mineola, for appellants.

C. D. Lennox, Jr., of Clarksville, and King, Mahaffey & Wheeler and C. E. Bryson, all of Texarkana, for appellees.

HODGES, J. This is an appeal from an order of the district judge, made in chambers, appointing a receiver for the Gibbons Manufacturing Company upon the application of the appellees and without notice to appellants. The following is the substance of the material facts alleged in the amended original petition, upon which the receiver was appointed:

The Gibbons Manufacturing Company is a private corporation organized under the laws of Texas, with its principal place of business at Clarksville, Red River county, Tex. G. C. Gibbons is the president and general manager of the corporation, and B. L. English is the secretary and treasurer. The board of directors is composed of G. C. Gibbons, Mrs. Melissa Annie Gibbons, Mrs. Helen Margaret Ward, B. L. English, and J. R. McCulloch. The company was organized in 1915 and has a capital stock of $105,000, of which $80,000 is common stock, and the remainder nonvoting preferred stock. Of the common stock, 52½ per cent. is owned by G. C. Gibbons and his wife, Mrs. Melissa Annie Gibbons, and his mother-in-law, Mrs. Helen Margaret Ward. The appellees, E. W. Bowers, J. C. Milan, J. T. McRoberts, D. I. Hooks, Bagby Lennox, Mrs. Sallie B. Lennox, J. R. McCulloch, J. L. Reed, A. J. Anderson, G. W. Monts, and Mrs. Mabel Caldwell, together with B. L. English, C. D. Scaff, and A. D. Lennox, are the owners of 47½ per cent. of the common stock. Certain of the appellees above named also own 58 per cent. of the nonvoting preferred stock.

The purpose for which the corporation was organized was the manufacture of wagon and vehicle stock and planing-mill products. Its manufacturing plant, valued at about $65,000, was located at Clarksville, Tex. In 1925 the corporation purchased a tract of timbered land in Smith county, Tex., and erected thereon, at Crow, a sawmill for the purpose of supplying material for the Clarksville plant.

From its organization to the year 1925 the affairs of the corporation were successfully and satisfactorily conducted under the management of G. C. Gibbons as president, and a board of directors composed of Gibbons and four of the petitioners. About 1925 Gibbons concluded that, as he owned 52½ per cent. of the common stock, he should be permitted to dictate the manner in which the affairs of the corporation should be managed, and began to grossly neglect the business of the corporation, thereby causing great financial loss during the years 1925, 1926, and 1927. At a stockholders' meeting held in 1928, objection was made to the inefficient business policy which had been adopted by Gibbons, and a demand was then made upon him to give more of his attention to the conduct of the company's business. Upon his promise to comply with that demand, Gibbons was reelected president and general manager for that year. But after his election Gibbons continued his inattention and neglect as before, and refused to follow the directions of the board of directors.

On December 31, 1928, a few days before the next annual election of officers, Gibbons transferred 5 shares of his stock to his wife, Mrs. M. A. Gibbons, and 5 shares to his mother-in-law, Mrs. H. M. Ward, for the purpose of qualifying them to participate in the election and to act as directors of the corporation. At the meeting which followed, Gibbons, his wife, and mother-in-law by their own votes were elected directors. That was done in pursuance of a conspiracy entered

into by them for the purpose of enabling Gibbons to gain complete control of the management of the corporation. Two other directors were named at the same time, but one of them later resigned, thus leaving Gibbons and his wife and mother-in-law in full control of the board.

Since that election Gibbons has completely dominated the other members of the board, and has virtually closed the manufacturing plant. at Clarksville, allowing its expensive and valuable machinery to remain idle and deteriorate. Petitioners believe that it is the intention of Gibbons, with the co-operation of his wife and mother-in-law, to transfer all of the activities of the corporation to the sawmill in Smith county, thereby incurring an unnecessary expense of at least $7,500.

The timber on the Smith county tract was being cut, sawed into lumber, and the lumber sold below the market value, instead of being shipped to Clarksville and there manufactured. If that course is continued, the timber on the Smith county tract will soon be exhausted, and the Clarksville plant rendered practically worthless, "thereby placing the company in imminent danger of insolvency."

A policy of insurance had been issued on the Clarksville plant, which provided that the insurance should be void if the mill there failed to run for a period of 10 successive days. The course pursued by Gibbons in failing to operate the Clarksville mill caused the risk of great loss to the stockholders by fire, against which there would be no protection.

Gibbons now maintains his residence at Dallas, about 150 miles from Clarksville, the place of business of the corporation. In 1928, without the knowledge or consent of the board of directors, he unnecessarily purchased at the expense of the company a costly automobile, which he is using in his own private business, and is charging the cost of its operation and maintenance against the company. He has entered on the books of the company as charges for traveling expenses the sum of $1,179.13, without further itemizing the same or filing proper vouchers therefor.

Prior to 1929 Gibbons had been receiving a salary of $3,600 per annum, but the directors for those years considered that sum excessive and wished to reduce it. But the present board has renewed that allowance, over the objection of the minority of the stockholders. In July, 1928, Gibbons made a statement in writing to the individual members of the board of directors, fraudulently representing that the plant had up to that time made a profit sufficient to pay a dividend of $8,000 to the common stockholders, while in fact the Clarksville plant suffered a loss of $10,950.27. The dividend was paid by Gibbons without any formal action of the board of directors, and solely upon his representation that the profit was earned. He submitted that statement in order to obtain 52½ per cent. of the dividend for his own use and benefit. Plaintiffs have reason to believe that no such dividend was earned, but that the sum distributed was paid out of the surplus funds of the corporation. At the time the petition was filed the corporation was indebted to the First National Bank of Clarksville in the sum of $10,000, and owed large amounts to other creditors. The indebtedness owing to the bank was not then due, but plaintiffs believe that, unless the business of the corporation was properly and economically managed, its assets would be insufficient to meet its debts at maturity. Gibbons, it is charged, is incapable of managing and conducting the business of the corporation, so as to meet the obligations of its creditors. It is further alleged that for the years 1925, 1926, 1927, and 1928 the corporation had lost money at the Clarksville plant, amounting in the aggregate to over $30,000.

It is the purpose of Gibbons to arbitrarily continue the management of the affairs of the corporation according to his own wishes and for his own selfish gain, regardless of the interest of the minority stockholders and creditors. The following is the prayer for relief:

"Wherefore, premises considered, plaintiffs pray for an accounting by the said G. C. Gibbons, defendant herein, and repayment of all moneys spent and charged by him, unitemized, as traveling expenses against the corporation; second, and for the appointment of a receiver forthwith to take charge of the Gibbons Manufacturing Company, with the usual and customary powers delegated to receivers of corporations, and that the defendants, officers, directors, and agent of said corporation, be required to surrender to said receiver the property, equipment, moneys, funds, books, files, and credits belonging to the Gibbons Manufacturing Company, or in which it has an interest, right, or title, and for all such other and further relief, general and special, from time to time, as in law or equity your said plaintiffs may be entitled to, and that defendants be cited to appear herein."

Upon the presentation of that petition, Hon. R. J. Williams, judge of the 102d judicial district, entered an order in chambers granting the relief prayed for and appointing B. D. Sunkel as receiver. The appointment was made on the same day the petition was presented, and without notice to the parties named as defendants. Sunkel immediately made the required bond and same was approved.

The Gibbons Manufacturing Company, G. C. Gibbons, and Mrs. Gibbons, and Mrs. Ward have prosecuted this appeal. They present two propositions, either of which, if sustained, requires a reversal of the case. The first is that a receivership should be created only as auxiliary to some other and distinct cause of action; and, it appear-

ing from the facts stated that the sole purpose for which this suit was filed is to have a receiver appointed, the appointment made was unauthorized and should be annulled. The second is that, even if the facts stated authorized the creation of a receivership, the conditions disclosed by the petition did not call for the appointment of a receiver without notice to the opposing parties. Some other objections to the petition and the order made are urged, but in view of the disposition made of the case these need not be noticed.

The general rule governing the appointment of receivers is thus stated by a well-known text-writer:

"In effect the appointment of a receiver is not unlike a statutory attachment, so far as the seizure and preservation of the property are concerned, and the ultimate right of the successful party relates back to the date of the appointment. The appointment of a receiver amounts to a sequestration of the property of the defendant in advance of a hearing and adjudication of his rights. Hence it is apparent that the appointment, save in a few exceptional cases, is an incident to the litigation itself, and not the main purpose of the litigation. Consequently it is a well-established rule that, in order to authorize the appointment of a receiver, it is essential that there shall be at the time of the appointment a suit pending in which relief other than the mere appointment of the receiver is sought. The exceptions to the general rule occur in matters relative to the preservation of the estates of insane persons, infants, and estates of decedents, where there does not appear to be any one who has a legal right to deal with the property.

"The pending action must be one for such relief as can be litigated between the parties, even if the application for the appointment be denied. Hence, if the sole object of the suit is the appointment of a receiver, the court will not take jurisdiction, in the absence of statutory provisions allowing such suits. The court must have jurisdiction to entertain the cause of action to which the appointment of a receiver would be ancillary, and have power to grant the relief demanded in the action, for, if the court has no jurisdiction over the subject-matter, it has no authority to appoint a receiver, since it is fundamental that there is no such proceeding in equity as a plain receivership action, in which the appointment of a receiver is the only desideratum. The action must, of course, be one which comes within the equitable jurisdiction of the court, and the relief prayed for must be of such a character as to be germane to the cause of action set up." 1 Tardy's Smith on Receivers (2d Ed.) pp. 50–52.

To the long list of cases there cited in support of the text the following may be added: People's Investment Co. v. Crawford (Tex.

Civ. App.) 45 S. W. 738; Security Land Co. v. South Texas Development Co. (Tex. Civ. App.) 142 S. W. 1191; Kokernot v. Roos (Tex. Civ. App.) 189 S. W. 505; Alto Cotton Oil & Mfg. Co. v. Berryman (Tex. Civ. App.) 218 S. W. 513.

But the same author qualifies that general rule by the following, found in section 299 of the same volume:

"It has been pointed out in our earlier chapters that, strictly speaking, there is no such thing as an action simply and solely for the appointment of a receiver. A receivership is merely an ancillary remedy, created in aid of the main remedy sought by the action itself. Sometimes it happens that a stockholder, suing in his representative capacity, has a special grievance of his own, such as a claim for stock which the directors or officers refuse to issue; occasionally the action seeks the redress of a corporate wrong, the return, for instance, to the corporation of money wrongfully received by an officer; and redress may be adjudged in the decree by which the receiver is appointed. For the most part, however, the wrongs complained of are wrongs to the corporation itself; the remedies sought are on behalf of the corporation itself; the complete remedy requires action, either by litigation or otherwise, on the part of a receiver; redress cannot be granted in the decree appointing the receiver. For the most part, then, the receiver has only a sort of indirect interest in the ultimate purpose for which the action is brought, and is not in a position to pray for any direct relief for himself. It is recognized, however, that this indirect interest of the stockholder is sufficient to satisfy the requirements of the rule concerning an independent cause of action."

In Hawes v. City of Oakland, 104 U. S. 450, 26 L. Ed. 827, the court uses this language:

"We understand that doctrine to be that, to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit: Some action or threatened action of the managing board of directors or trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction, completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and

illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity. Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases."

That seems to be the general recognized doctrine adopted by many other courts, among them some of our Courts of Civil Appeals. Berkshire Petroleum Co. v. Moore (Tex. Civ. App.) 268 S. W. 484; Prairie Lea Production Co. v. Tiller (Tex. Civ. App.) 286 S. W. 638; Falfurrias Immigration Co. v. Spielhagen, 61 Tex. Civ. App. 111, 129 S. W. 164.

Article 2293 of our Revised Civil Statutes of 1925 provides:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this state, in the following cases: * * * 3. In cases where a corporation is insolvent or in imminent danger of insolvency; or has been dissolved or has forfeited its corporate rights. 4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

The first question we wish to discuss is: Do the facts stated in the petition authorize the creation of a receivership in this case? The petitioners charge that Gibbons and his wife and mother-in-law are in full control of the management of the business of the corporation, and that Gibbons dictates its business policy. Those three own a majority of the stock, and that fact enables them to continue in control of the corporate affairs. They have it in their power to wreck the corporation, if they see proper to adopt a business policy which leads to that end. The minority shareholders can be and are excluded entirely from any voice in the management of the corporate business. If the averments of the petitioners are true, the tendency of the present business policy pursued by Gibbons is toward ultimate insolvency. The petition contains many charges of misconduct and dangers of prospective injury to the company business, which are so general that they can hardly be considered as sufficient to justify the interposition of a court of equity upon that ground. About the only specific act stated, which may be relied on as furnishing sufficient grounds for taking the management of the corporate affairs from Gibbons and his associates on the board, is the unwarranted abandonment of the operation of the manufacturing plant at Clarksville, through which the principal business for which the corporation was organized was carried on. That policy, together with the sale of the timber supply, if continued for any considerable length of time, would doubt-less result in insolvency. While the petition does not state what the assets of the corporation are, or the total amount of its indebtedness, the loss of its principal source of revenue, and the prosecution of its remaining business activities at a heavy loss, must inevitably end in disaster. If that course of conducting the business of the corporation is unwarranted by the existing conditions surrounding the company's affairs, and was adopted to accomplish some selfish end personal to Gibbons, we think that, under the terms of our statute, as well as under the general equity rules, a situation is shown which may justify the creation of a receivership.

When the statute provides that a receiver may be appointed when a private corporation "is in imminent danger of insolvency," it incidentally recognizes that status and the conditions which bring it about as sufficient to warrant the interposition of a court of equity to take charge of the corporate affairs and administer such relief as may, under the circumstances, be proper. In a sense it is true that a receivership is only an auxiliary agency and cannot be made the sole and ultimate purpose of a suit. But there are some forms of relief that a court of equity is authorized to grant, which can be made effective only through the agency of a receivership. It appears, for instance, that the ultimate purpose of this suit is to put an end to what the petitioners allege is an arbitrary and ruinous course of business, which will in the end result in serious loss to both creditors and shareholders. The charges, if true, certainly show that a court of equity is the only available source of relief to which the petitioners can apply. While they do not specifically pray for any restraining orders, they ask for general relief, which upon a full hearing is sufficient to authorize the court to render such judgment as may be necessary and proper.

However, we do not think that under the facts stated the court should have appointed the receiver without notice to the appellants. The facts do not disclose a situation where the danger of insolvency is so imminent as to justify such haste. Gibbons, together with his wife and mother-in-law, are owners of the majority of the stock, and as such are entitled to control the business affairs of the corporation. That authority should be taken from them while the corporation is a going concern only when necessary to protect the rights of creditors and the minority stockholders. Such legally appointed officials should never be displaced without a hearing, unless the facts stated and sworn to clearly show that the danger of injury to the petitioners is too imminent to permit the delay required for notice to the opposing parties. Security Land Co. v. South Texas Development Co. (Tex. Civ. App.)

142 S. W. 1194. Many other cases announcing similar holdings might be cited.

The order appointing the receiver will be set aside, and the case remanded for further proceedings.